**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Sherri L. Noot,

Plaintiff,

v.

State of Minnesota, Department of Human Services

Defendant.

Civil No. 00-460 RHK/JMM

**MEMORANDUM OPINION AND ORDER**

---

James T. Hynes, Hynes Law Office, Saint Paul, Minnesota, for Plaintiff.

Timothy D. Webb, Assistant Minnesota Attorney General, Saint Paul, Minnesota, for Defendant.

---

## INTRODUCTION

Sherri L. Noot brought suit against the State of Minnesota's Department of Human Services (hereinafter "DHS" or "the State") alleging she was not chosen for promotion to a managerial position in the DHS because her employer viewed her – a newly married woman – as someone who presumably would start having children and, therefore, would be unlikely to remain in that position. The State denies that it decided not to offer Noot the managerial position due to either her gender or "gender plus" a perception that she "presumably would be having children." The State contends Noot was not promoted because she was not the best qualified applicant. Before the Court is the State's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For

50

FILED MAY 09 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD MAY 09 2001
DEPUTY CLERK

the reasons set forth below, the Court will grant the motion.

## BACKGROUND

### I. Noot's Employment at the Department of Human Services

Noot began working as a licensor for the DHS in October of 1995. (Hynes Aff. 3d Ex. (Dec. 8, 1998 letter to Burzinski from Plaintiff); (Webb Aff. Ex. A at 14 (Dep. of Sherri Noot).).) In 1998, Noot worked as a licensor for the Developmental Disabilities Unit ("DD Unit") in the Licensing Division of the DHS. (Noot Aff. ¶ 2.) Her supervisor was Laura Lovdahl, who held the position of "Unit Manager." (Noot Aff. Ex. A.) Jane Kjos also worked as a licensor in the DD Unit in the summer of 1998; she subsequently divorced and took the name Jane Wiemerslage.[1] (Id.) During the relevant time period, Mike Atwood was also a licensor for the DD Unit, working at a regional office in Saint Cloud. (Webb Aff. Ex. C at 19 (Dep. of Larry Burzinski).)

From May 26 through September 7, 1998, Lovdahl was on maternity leave, and, Noot served as acting unit manager for the DD Unit. (Webb Aff. Ex. A at 17.) The parties do not dispute that Noot performed satisfactorily as acting unit manager during the summer of 1998. Approximately two months after returning from her maternity leave, Lovdahl decided to resign her position in order to spend more time with her family. By a

---

[1] When Noot was first appointed to serve as Acting Unit Manager in May of 1998, Wiemerslage was a licensor in the DD Unit. (See Noot Aff. ¶ 3; Kinney Aff. ¶ 2.) Wiemerslage subsequently left the DD Unit to work elsewhere in the Department. (See Webb Aff. Ex. A at 36.)

letter dated November 20, 1998, Lovdahl notified her immediate superior, Larry Burzinski, of her intent to resign effective January 5, 1999. (Hynes Aff. 11th Ex. (Lovdahl resignation memo).)

## II. The Department Seeks to Fill Lovdahl's Position

On December 3, 1998, Burzinski sent an e-mail notifying over fifty employees that the unit manager position was open and that the Department would "conduct interviews for the position from the Unit Manager list." (Hynes Aff. 1st Ex. (Dec. 3, 1998 e-mail from Burzinski).) Noot was among the employees who received the e-mail, as was Atwood; Wiemerslage was not sent the e-mail. (Id.) Burzinski stated that anyone not on the "Unit Manager list" who was interested in the position should make arrangements to be "tested" by the Human Resources Office. (Id.) Burzinski indicated that he hoped to have a slate of candidates selected for interviewing no later than the week of December 14. (Id.) On December 8, 1998, Noot wrote to Burzinski expressing her interest in the position. (Hynes Aff. 3d Ex. (Letter to Burzinski from Plaintiff).)

In mid-December, the Department posted the Unit Manager position for a period of ten days. (Blumstein Aff. ¶ 5; Hynes Aff., 2d Ex. (Dec. 18, 1998 e-mail from Burzinski).) It became apparent that, given the posting of the position, a replacement for Lovdahl would not be selected before her last day of work. (Webb. Aff. Ex. B at 20-21 (Dep. of Gerald Kerber).) In December, Burzinski asked Noot to again serve as the

acting unit manager, and she agreed.[2] (See Hynes Aff., 2d Ex.) By an e-mail dated December 18, 1998, Burzinski announced that Noot would serve as the acting unit manager from the date of Lovdahl's departure until the position had been filled. (Id.) Noot began assuming some of the unit manager's duties on January 5, 1999. During the month of January, Noot also continued to perform tasks as a licensor. Noot was married on January 23, 1999.

## III. The Interview Process

In late January, the Human Resources Division ("HR") forwarded a revised list of eligible applicants for the Unit Manager position.[3] HR added Wiemerslage's name to the list after she appealed her eligibility score and struck the name of Karl Noot (Plaintiff's husband) because he no longer worked for the Department.[4] (Blumstein Aff. ¶¶ 12, 13

---

[2] Noot avers that, when Burzinski asked her to serve as Acting Unit Manager in December, he told her that if she were to decline, he would appoint her anyway. (Noot Aff. ¶ 4.)

[3] The unit manager position was governed by a Middle Management Association ("MMA") contract. (Blumstein Aff. ¶ 2.) Article 14 of the MMA contract sets out the procedure for filling vacancies. (Id. Ex. A.) The Department was required to post a vacancy "within the seniority unit for ten calendar days so that qualified supervisors in the same classification may indicate their desire to be considered for the position." (Id. Ex. A at 28.) The State avers that, when the Licensing Division did not receive notice from any such supervisors during the ten-day posting period, Human Resources prepared a "competitive agency promotional list" consisting of current DHS employees possessing the required qualifications. (Blumstein Aff. ¶ 7 & Ex. B.) The State asserts that this is consistent with common practice in the Department. (Blumstein Aff. ¶ 10.)

[4] In early January of 1999, Joan Blumstein from the Human Resources Division calculated Wiemerslage's eligibility score as a 70. Ms. Wiemerslage appealed this score

and Ex. B.) Three people conducted the interviews for the unit manager position: Laura Zrust, Julie Reger, and Larry Burzinski. (Zrust Aff. ¶¶ 2, 3; Reger Aff. ¶¶ 2, 3; Burzinski Aff. ¶¶ 3, 4.) Each candidate was asked the same questions. (Zrust Aff. ¶ 4; Reger Aff. ¶ 7.) Each interviewer scored the candidates in response to each question on a scale of one to five, with five being the highest mark. (Zrust Aff. ¶ 13; Reger Aff. ¶ 10; Burzinski Aff. ¶ 7.)

When Noot returned from her honeymoon on Tuesday, February 2, she retrieved a voice mail message telling her that she had been scheduled for an interview on "Tuesday, February 4." (Webb Aff. Ex. A at 133.) The day and the date stated in the message did not correspond – February 4 was a Thursday, not a Tuesday. Noot recognized the discrepancy and "took it to believe that [the interview] would be on within the next week." (Id. at 50-51.) Noot was not in the office on Wednesday, February 3, having taken that day, as well as Friday, February 5, off from work. Noot was scheduled, however, to be in the office on Thursday, February 4, and had planned on that day to check phone messages, get caught up, and prepare for the following week. (Id. at 51.) Noot returned to the office on Thursday, February 4, to discover that her interview was that day. (Id. at 8, 50.) Noot asked to have the interview rescheduled, but Burzinski

---

and, upon further review of Wiemerslage's credentials and experience, Blumstein found she had made a mistake in accounting for Ms. Wiemerslage's experience as a licensor. Accordingly, Ms. Blumstein revised Ms. Wiemerslage's score from a 70 to a 95 and had Ms. Wiemerslage's name added to the eligibility list. (Blumstein Aff. ¶¶ 12, 13.)

refused and insisted that the interview be done that afternoon. (Id. at 52.)

Noot proceeded with the interview on February 4. The interviewers thereafter scored her interview and those of the other applicants. As between Noot and Wiemerslage, Zrust gave Noot a score of 87 and Wiemerslage a score of 91 (Zrust Aff. Exs. A & B), Reger gave Noot a score of 66 and Wiemerslage a score of 76 (Reger Aff. Exs. A & B), and Burzinski gave Noot a score of 90 and Wiemerslage a score of 96. (Burzinski Aff. Exs. A & B.) Each of the interviewers scored Wiemerslage the highest among the interviewees. Agreeing that Wiemerslage was their first choice for the position, the interviewers met with Jerry Kerber, director of the Licensing Division for the DHS, and recommended that Wiemerslage be selected as Unit Manager for the DD Unit. (Webb Aff. Ex. C at 38.)

A few days after the interview, Noot went to Burzinski's office because she had not heard whether a decision had been made. (Webb Aff. Ex. A at 92.) Burzinski advised Noot that they had decided not to offer her the position because Noot's performance in the Acting Unit Manager position had not been as good in January as it had been the previous summer, but that people "understood, with the wedding and all." (Id. at 93-94). Zrust subsequently talked to Noot and told her that it had been a tough decision to make and that Noot had done "a good job" on her interview. (Id. at 102.) Zrust then turned to "social conversation," asking about Noot's husband and "family stuff." (Id. at 100-02.)

## ANALYSIS

## I. STANDARD OF DECISION

Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences which may be reasonably drawn from it, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but rather must demonstrate the existence of specific facts that create a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

The nonmovant, however, cannot avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. See Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992). The court does not weigh facts or evaluate

the credibility of affidavits and other evidence on a motion for summary judgment. See Liberty Lobby, 477 U.S. at 249. The key inquiry in ruling on an employer's motion for summary judgment under Title VII is whether the plaintiff "has presented evidence sufficient to create a genuine issue of fact as to whether [her] employer intentionally discriminated against [her]." Moschetti v. Chicago, Cent. & Pac. R.R. Co., 119 F.3d 707, 709 (8th Cir. 1997).

## II. GENDER DISCRIMINATION UNDER TITLE VII

The employment action at issue is the State's failure to promote Noot to the position of Unit Manager for the DD Unit. The decision maker for that employment action was Jerry Kerber, director of the Licensing Division for the DHS. (Webb. Aff. Ex. B at 40-41.) Kerber solicited input from the people who interviewed the applicants and, based on their recommendations, decided to appoint Wiemerslage to the Unit Manager position. (See id.) Noot added a claim of gender discrimination to her Complaint based on allegations made "upon information and belief" that Michael Atwood -- a male -- was offered the job of acting unit manager, and that, had he accepted that position, he "would have received the job on a permanent basis." (Amended Compl. ¶ 23.)

The Court analyzes the State's summary judgment motion under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973).[5]

[5] Neither party argues that there is direct evidence of discrimination such that the McDonnell Douglas analysis does not apply. The only statement that is arguably direct evidence occurred sometime between Lovdahl's resignation and Noot's wedding.

The Eighth Circuit has explained the McDonnell Douglas analysis as follows:

> First, the plaintiff has the burden of presenting a prima facie case. If the plaintiff does so, a legal presumption arises that the employer unlawfully discriminated against the plaintiff. Then, the employer must produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The McDonnell Douglas framework only shifts the burden of production; the burden of persuasion rests at all times with the plaintiff. Once the employer meets his burden of production, the McDonnell Douglas framework--with its presumptions and burdens--is no longer relevant, and the sole remaining issue is whether the employer discriminated. Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. If the employer meets its burden of production, the plaintiff has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. It is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation, particularly if disbelief is accompanied by a suspicion of mendacity. However, a showing by the plaintiff that the employer's reason for its decision was a pretext for discrimination will not necessarily insulate the plaintiff from summary judgment.

Dammen v. UniMed Med. Ctr., 236 F.3d 978, 980-81 (8th Cir. 2001) (internal quotations and citations omitted) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)). The State argues it is entitled to summary judgment because Noot cannot state a prima facie case of a discriminatory failure to promote based on gender.

Noot bears the initial burden of establishing a prima facie case of discrimination.

---

Burzinski allegedly told Noot that he had been surprised Lovdahl had quit following the birth of her child and that he was disappointed, as he had always assumed Lovdahl would be "a lifer." (Webb Aff. Ex. A at 104-05.) Burzinski, although he supervised the Unit Manager position for the DD Unit, did not decide who to hire. The Court concludes that McDonnell Douglas applies.

LaCroix v. Sears, Roebuck, and Co., 240 F.3d 688, 694 (8th Cir. 2001). The Eighth Circuit has cautioned that "the threshold of proof necessary to make a prima facie case is minimal." Johnson v. Arkansas State Police, 10 F.3d 547, 551 (8th Cir. 1993); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). The appropriate inquiry with respect to the prima facie case is whether the plaintiff has demonstrated that the challenged employment decision "occurred in circumstances which allow the Court to infer unlawful discrimination." Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994). The Court concludes that Noot has not alleged sufficient circumstances to permit such an inference.

Noot has not presented evidence from which one could find either (a) that Atwood was offered the permanent unit manager position, or (b) that, had Atwood accepted the acting unit manager position, he would have been appointed to the permanent position. Kerber testified that he approached Atwood about his willingness to assume unit manager duties on an acting basis only. (Webb Aff. Ex. B at 19-22, 25.) In his deposition, Burzinski was initially unable to recall whether he spoke with Atwood concerning the permanent or the acting position. (Webb. Aff. Ex. C at 14.) Later in his deposition, however, Burzinski testified that Lovdahl had told him that Atwood was her preferred choice to serve as acting manager. (Id. at 22-23.) There is no evidence establishing that Atwood was offered the permanent unit manager position and was not required to

interview for it.[6] Furthermore, there is nothing beyond Plaintiff's speculation that, had Atwood served as acting unit manager, he would have been chosen for the permanent position following an interview process. Plaintiff's speculation stands in opposition to undisputed evidence that Atwood had no interest in the position. (Webb Aff. Ex. B at 21.)

Even if the evidence established all that Noot claims it does regarding Mike Atwood, such evidence would not be legally sufficient to state a prima facie case. The typical prima facie case for a discriminatory failure to promote claim based upon gender consists of the following four elements:

(1) the plaintiff is a member of the protected class;

(2) she was qualified for a position for which the defendant was seeking applicants;

(3) she was rejected for the position; and

(4) the employer hired a man for the position.

Kobrin v. University of Minn., 121 F.3d 408, 414 (8th Cir. 1997), cert. denied, 522 U.S. 1113 (1998); Harris v. Secretary, U.S. Dep't of the Army, 119 F.3d 1313, 1320 (8th Cir. 1997); Krenik, 47 F.3d at 957. Clearly, Noot cannot demonstrate that a man was promoted to the position she sought. Therefore, Noot argues strenuously that she is not required to prove that the position went to a person outside the protected class, arguing

[6] Plaintiff's counsel acknowledged at the oral argument that he did not attempt to take Atwood's deposition to obtain his view of the conversations he had with Kerber and/or Burzinski.

from cases in which a prima facie case was established by a showing that the defendant "sought to fill the position with someone having plaintiff's qualifications." (See Pl.'s Mem. Opp. Summ. J. at 5.) Such a formulation for the prima facie case is inapposite to the adverse employment decision challenged here.[7] Noot has come forward with no case, and this Court has found none, in which the fact that an employer offered an acting position to someone outside the protected class was sufficient to support an inference of unlawful discrimination with respect to the employer's later decision to hire someone from the protected class for the permanent position.

The Court concludes that Plaintiff has not stated a prima facie case of gender discrimination. Because Noot has not made out a prima facie case of discrimination, the Court does not reach her argument that a jury could conclude that the State's stated reason for not promoting her was pretextual. See Lowery v. Hazelwood Sch. Dist., 244 F.3d 654, 658 (8th Cir. 2001) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 147-48 (2000)). The Court will dismiss Noot's gender discrimination claim.

## II. "GENDER PLUS" DISCRIMINATION UNDER TITLE VII.

---

[7] None of the cases Noot cites in support of this standard involve an alleged discriminatory failure to hire or promote. Davenport v. Riverview Gardens School District, 30 F.3d 940 (8th Cir. 1994), involved a challenge to a failure to renew an African American's employment contract. Rinehart v. City of Independence, 35 F.3d 1263 (8th Cir. 1994), involved a challenge that the plaintiff was discharged from his position based upon age. As a result of the employment actions challenged in Rinehart and Davenport, the plaintiffs' positions in those cases remained open. Hence, the Eighth Circuit formulated the standard quoted by Noot.

Noot alleges that within the licensing division of the DHS, women who either have or might potentially have small children are generally not promoted to positions of authority. (Amended Compl. ¶ 31.) Thus, when Noot was denied the Unit Manager position, she claims that she was "treated, as a subclass of women, not only different than women who did not have young children and would presumably not be having children, but . . . also treated differently than men." (Id. ¶ 33.) The State moves for summary judgment on Noot's claim of gender plus discrimination on the grounds that (a) Noot cannot establish a prima facie case of such discrimination, and (b) Noot has not come forward with evidence from which a reasonable jury could ultimately find that the State treats men who "have young children or presumably would be having children" differently than similarly situated women.

In Phillips v. Martin Marietta Corp., 400 U.S. 542 (1971) (per curiam), the Supreme Court first recognized a "gender-plus" discrimination claim, holding that because Title VII "requires that persons of like qualifications be given employment opportunities irrespective of their sex," one cannot read the statute as "permitting one hiring policy for women and another for men – each having pre-school-age children." 400 U.S. at 544. By including "gender plus" discrimination claims within the scope of Title VII, the Supreme Court effectively "impose[d] an equal protection gloss upon the statute, i.e., similarly situated individuals of either sex cannot be discriminated against vis-a-vis members of their own sex unless the same distinction is made with respect to

those of the opposite sex." Willingham v. Macon Tel. Publ'g Co., 507 F.2d 1084, 1089 (5th Cir. 1975).

With respect to an alleged discriminatory failure to promote based upon "gender plus" another factor, Noot must show that she is a member of a discernable subclass of women; that she was qualified for a position for which the employer was taking applications; that she applied and was rejected for the position; and that someone not a member of the subclass was selected for the position or the position remained vacant.[8] See Longariello v. School Bd. of Monroe County, Fla., 987 F. Supp. 1440, 1449 (S.D. Fla. 1997), aff'd, 161 F.3d 21 (11th Cir. 1998). The State argues that Noot's alleged subclass of "women who presumably would be having children" depends upon decision makers in the DHS having a perception regarding the likelihood that an employee would have children; Noot, however, has not offered evidence tending to show that DHS decision makers have any such perception. The Court agrees.

In her deposition, Noot was asked to identify from an organizational chart those women who fall within the subclass of women she has alleged. When asked how she identified those individuals, Noot testified that it was based upon her knowledge or belief that the women were married and under the age of forty. (Webb. Aff. Ex. A at 86-87.)

---

[8] An otherwise legitimate inference of discrimination is not defeated in a "gender plus" case simply because the employer hired someone of the same gender. See Marks v. National Communications Ass'n, Inc., 72 F. Supp. 2d 322, 329, 331 (S.D.N.Y. 1999) (holding that overweight female plaintiff stated prima facie case of gender-plus-weight discrimination where employer hired "thin and pretty" woman).

Noot did not include women who were under age forty but either single or divorced as among the women who "presumably would be having children." Noot has presented no evidence from which one can infer that decision makers in the DHR perceive any men or women as being likely to have children. Nor, for that matter, has Noot shown that the decision makers share Noot's criteria for determining who is in that category. The Court concludes that Noot has not identified a discernible subclass of women and has not shown a prima facie case of "gender plus" discrimination.

Even if the Court assumes that Noot states a prima facie case of gender plus discrimination, it concludes that she has not demonstrated the existence of a genuine issue of material fact as to whether she was treated differently than similarly situated men. See Coleman v. B-G Maintenance Mgmt. of Colo., Inc., 108 F.3d 1199, 1205 (10th Cir. 1997) (stating that ultimate inquiry in Title VII "gender plus" case is whether defendant treated plaintiff differently than similarly situated men); Sherman v. American Cyanamid Co., 996 F. Supp. 719, 727 (N.D. Ohio 1998), aff'd, 188 F.3d 509 (6th Cir. 1999), cert. denied, 120 S. Ct. 1532 (2000); accord Martinez v. NBC, Inc., 49 F. Supp. 2d 305, 310 (S.D.N.Y. 1999) (holding that an employer cannot "treat men characterized by the additional characteristic more or less favorably than women with the same added characteristic"). . Noot testified that three men in the Licensing Division experienced a "change in position" without being interviewed (Webb. Aff. Ex. A at 70-71), whereas "women who presumably would be having children" were not treated in the same manner.

The Court has reviewed the record regarding these individuals and observes the following: one of the male employees was demoted, not promoted (Webb Aff. Ex. B at 77); the second male employee was promoted to a unit manager position in the early 1990s and was interviewed for that position (id.); and the third male employee became a senior investigator in the Licensing Division after having been a junior investigator (id. at 78). There is no evidence that the change from a junior investigator to a senior investigator is comparable to the promotion Noot sought. Furthermore, the male senior investigator applied for the Unit Manager position for the DD Unit that Noot sought. He was interviewed and was not selected.

Noot further argues that the organizational chart for the Licensing Division supports a finding of disparate treatment based on "gender plus" because the individuals in the unit manager positions either have adult children, are divorced, or are single. (Webb Aff. Ex. A at 119.) Noot testified, however, that she did not know whether, at the time those persons were promoted into unit manager positions, they were divorced or single. (Id. at 120.) The Court will leave aside for the moment the fact that there is no evidence from which one could infer that decision makers in the Licensing Division share Noot's perspective that divorced or single women are not likely to have children. The Court concludes that, in any event, evidence regarding the current status of individuals in the Licensing Division who hold unit manager positions does not tend to show disparate treatment in the hiring of women who "presumably would be having children" into

middle management.

Ultimately, Plaintiff's claim centers on the complaint that she did not get a job she felt she was promised. Even if, as Plaintiff argues, the interview process for that position was flawed, that does not reasonably support an inference that she, as a recently married woman who "presumably would be having children," was treated differently than similarly situated men at the DHS. The Court does not sit as a super-personnel department, evaluating the wisdom of an employer's decisions. The critical inquiry for this Court is whether Noot has presented sufficient evidence to give rise to a genuine issue of material fact concerning whether an improper factor motivated the employer's decision. Based upon its review of the record, the Court concludes that Noot has failed to meet her burden on summary judgment.

## CONCLUSION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** the State's Motion for summary judgment is **GRANTED**. The Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: May 9, 2001

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

Court File: Civ.00-460 (RHK/JMM)

**DATE MAILED TO COUNSEL/PRO SE PARTIES:** May 9, 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.